## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THE PARISH OF JEFFERSON**          *    **CIVIL ACTION: 2:18-cv-05206**
                                     *
**VERSUS**                           *    **JUDGE FALLON**
                                     *
**DESTIN OPERATING COMPANY, et al.** *    **MAGISTRATE JUDGE WILKINSON**
*********************************************

---

### PLAINTIFF AND INTERVENORS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FEDERAL OFFICER JURISDICTION DOES NOT EXIST EVEN IF A
      DEFENDANT REFINES ITS OWN CRUDE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  CRUDE OIL IS A COMMODITY, AND PRODUCING IT IS NOT A GOVERNMENT TASK . . . . . . 5

IV.   POST-PRODUCTION ALLOCATION AND TRANSPORTATION OF CRUDE . . . . . . . . . . . . . . . 7

V.    THE JURISDICTIONAL REQUIREMENT OF A COLORABLE FEDERAL DEFENSE . . . . . . . . . . 9

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

TABLE OF AUTHORITIES

*Arizona v. Manypenny*,
    101 S.Ct. 1657, 1664 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Cty. Bd. of Arlington Cty., Virginia v. Express Scripts Pharmacy, Inc.*,
    996 F.3d 243, 255 (4th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Glenn v. Tyson Foods, Inc.*,
    40 F.4th 230, 236 (5th Cir.2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jackson v. Avondale Indus. Inc.*,
    469 F.Supp.3d 689, 701 (E.D. La.2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jax Leasing v. Xiulu Ruan*,
    359 F. Supp.3d 1129, 1136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286, 296 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    2022 WL 1039685, at *28, *34 (4th Cir. Apr. 7, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mesa v. California*,
    489 U.S. 121, 129, 136-37 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Par. of Cameron v. Auster Oil & Gas Inc.*,
    No. 2:18-cv-00677, 2022 WL 17852581 (W.D. La. Dec. 22, 2022) . . . . . . . . . . . . . . . . . 1

*Par. of Plaquemines et al v. Caskids, et al*,
    No. 2:18-cv-5262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Par. of Plaquemines v. Chevron USA, Inc.*,
    22-30055, 2022 WL 9914869, at *2 - 4 (5th Cir. Oct. 17, 2022) . . . . . . . . . . . . . . . 1-3, 9, 11

*Par. of Plaquemines et al v. Goodrich Petroleum, et al*,
    No. 2:18-cv-5238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Par. of Plaquemines et al v. LLOG, et al*,
    No. 2:2:18-cv-5265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Par. of Parish of Plaquemines v. Palm Energy Offshore, L.L.C.*,
    No. 2:18-cv-5259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Par. of Plaquemines v. Riverwood Prod. Co.*,
  No. 2:18-cv-5217, 2022 WL 101401, at *7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Par. of St. Bernard et al v. Atlantic Richfield, et al*,
  No. 2:18-cv-5222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Port of Corpus Christi Auth. of Nueces Cnty., Texas, v. Port of Corpus Christi, L.P.*,
  22-40124, 2023 WL 116726, at *5 (5th Cir. Jan. 6, 2023) . . . . . . . . . . . . . . . . . . . . . . . . 5

*St. Charles Surgical Hosp. v. Louisiana Health Serv.*,
  990 F.3d 447, 454-455 (5th Cir.2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 11

*Smiley v. Honeywell*,
  2015 WL 13285091, at *4 (N.D. Ga. Apr. 20, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Washington v. Monsanto*,
  738 F. App'x 554, 555 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Watson v. Philip Morris Companies, Inc.*,
  551 U.S. 142, 143; 127 S.Ct. 2301, 2302; 168 L.Ed.2d 42 (2007). . . . . . . . . . . . . . . . . . . 6

*Williams v. Todd Shipyards Corp.*,
  154 F.3d 416 (5th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Willingham v. Morgan,*
  395 U.S. 402, 406–07 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

28 U.S.C. § 1442. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I.    INTRODUCTION

The jurisdictional issues addressed by Judge Feldman in *Plaquemines Parish v. Riverwood Production Co.*[1] and by Judge Summerhays in *Par. of Cameron v. Auster Oil & Gas Inc.*, 2:18-CV-00677, 2022 WL 17852581 (W.D. La. Dec. 22, 2022) have now been resolved by the Fifth Circuit. The Fifth Circuit in *Plaquemines Parish et al v. Chevron U.S.A., et al*, No. 22-30055 (5th Cir.) has: (1) affirmed Judge Feldman's ruling granting remand (Doc. 00516510840); (2) denied Defendants' petitions for rehearing and for rehearing *en banc* (Doc. 00516559393); and (3) denied Defendants' motion to stay the issuance of the mandate (Doc. 00516570509).[2]  The mandate was issued on 12/15/2022. The Supreme Court denied Chevron's petition for certiorari on February 27, 2023.

Defendants attempt to distinguish this case from *Riverwood* by arguing that federal officer jurisdiction exists when a defendant refines crude that it produced. However, in this memorandum, Plaintiffs and Intervenors will show that the relevant jurisdictional factual and legal issues presented in this case are indistinguishable from the relevant jurisdictional factual and legal issues in *Riverwood.*

## II.    FEDERAL OFFICER JURISDICTION DOES NOT EXIST EVEN WHEN A DEFENDANT REFINES ITS OWN CRUDE

Defendants argue that federal officer jurisdiction exists in this case because Gulf refined its own crude. This argument is based on a strained and twisted reading of *dictum* in *Par. of*

---

[1]*Par. of Plaquemines v. Riverwood Prod. Co.*, CV 18-5217, 2022 WL 101401.

[2]*Plaquemines Par. v. Chevron USA, Inc.*, 22-30055, 2022 WL 9914869. The cited document numbers reference the Fifth Circuit's docket.

*Plaquemines v. Chevron USA, Inc.*[3]  This case, like the forty-one other coastal cases filed in Louisiana, targets only crude oil production activities. It has nothing whatsoever to do with refinery or transportation activities.

Defendants contend that §1442 jurisdiction exists in any case where a government-contracted refinery was owned by a corporate entity (a "person" under § 1442) that also produced some of the crude that it refined because, under these circumstances, the corporate entity was "acting under" federal officers for all purposes.  Such an argument distorts § 1442 and the applicable Fifth Circuit jurisprudence, for it requires that this Court find that a "person" who "acts under" a federal officer for any purpose acts under that officer for all purposes. In other words, Defendants argue that the limited number of WWII defendant-producers who refined their own crude were "acting under" federal officers when they conducted E & P activities, while the large majority of WWII defendant-producers who conducted identical E & P activities, but did not refine their own crude, were not "acting under" federal officers (under the Fifth Circuit's *Riverwood* ruling)*.*

In *Riverwood*, Humble Oil (a predecessor to Exxon) operated the Potash Field. The evidence submitted by Defendants showed that the crude produced by Humble in the Potash Field *was not sent* to Humble's refinery in Texas, but rather, was sent to the Standard Oil refinery in Baton Rouge and to the Shell refinery in Norco.[4] Thus, Humble's crude oil production in the Potash Field had nothing to do with Humble's government refinery contracts.  Judge Feldman found that any "government

---

[3]*Plaquemines II,* 2022 WL 9914869.

[4]*See* Gravel Declaration, Doc. 72, Exh. 81. ECF pp. 289-92, *Riverwood* Appellate Record, ROA.13948-51. The record references in this memorandum include references to the page numbers in this record and the corresponding page numbers in the Riverwood Appellate record. The entire Riverwood Appellate Record has been filed in the record of this case. *See* Doc. 72.  The corresponding "ROA" page numbers are stamped in red on the bottom right side of each record page.

directives" in refinery contracts "were directed at the refiners, and not at Humble Oil," and that Humble did not "act under" any federal officer that was directing the refiners.[5] Put simply, Judge Feldman found that Humble's crude production activities were not "under that contractual direction" aimed at any refiner, including its own refinery.[6]

In *Riverwood*, no individual corporate defendant produced the crude that it refined. But Defendants contend that, unlike Humble in *Riverwood*, The Texas Company in this case "acted under" federal officers in its production of crude oil because it produced crude that it also refined. The Fifth Circuit in *Riverwood* observed: "As the district court noted, the 'refineries, who had federal contracts and acted pursuant to those contracts, can *likely* remove [under § 1442], but that does not extend to [parties] not *under **that** contractual direction*.' *Plaquemines*, 2022 WL 101401, at *7."[7] Despite this express limitation of "*likely*" federally governed claims to claims governed by directives contained solely within refinery contracts, Defendants point to this statement in *Riverwood* as an acknowledgment by the Fifth Circuit that this case should be treated differently than other Louisiana coastal cases in this district wherein no defendant produced the crude oil that it refined. The Fifth Circuit **did not hold,** however, that a defendant who produced crude that it also refined can remove under § 1442 if its refinery was under contractual federal direction and its production operations were not.

Even if the WWII refinery contracts in this case did impose a level of control sufficient to

---

[5]*Par. of Plaquemines v. Riverwood Prod. Co.*, CV 18-5217, 2022 WL 101401, at *7.

[6]Doc. 72, Exhibit 102, ECF p. 185, *Riverwood* Appellate Record, ROA.17559.

[7]*Plaquemines Par. v. Chevron USA, Inc*., 22-30055, 2022 WL 9914869, at *4 (5th Cir. Oct. 17, 2022)(emphasis supplied).

satisfy the "acting under" prong (actually, they did not),[8] a refinery's acts under a federal officer are the acts of the refinery, not the crude oil operators, and the refinery's colorable federal defenses are the refinery's federal defenses, not the crude oil operators' federal defenses. And this is so even when crude oil production operations are owned by the same corporate entity that refines its own crude under a government refining contract. Addressing this specific issue in a different context, the Fifth Circuit in *St. Charles II*, a health insurance case, explains that a defendant "acting under" a federal officer does not necessarily "act under" that officer for "all purposes":

> "[A]s the district court correctly noted, *we did not hold in St. Charles I that BCBS "acts under" the direction of OPM for all purposes*. If the district court concludes that St. Charles's waivers are valid, then there may be little room to contend that BCBS 'acted under' OPM in administering non-federal health insurance payments. And the same may be true if, irrespective of the waivers, the court concludes that St. Charles's complaint does not include any federally-governed claims . . .").[9]

*St. Charles II* emphasizes that the "acting under" and "connection" elements are "distinct."[10] Section 1442 jurisdiction requires that the complaint include "**federally governed claims**"[11]*and* that "the **specific conduct** at issue" be "connected or associated with an act pursuant to the federal officer's directions."[12] Defendants can point to no provision in any WWII refinery contract that addresses crude production methods. Applying the reasoning of *St. Charles II,* a company found to

---

[8]*See* refinery contracts, Doc. 72, Exh. 81, ECF pp. 309-400, Exh. 82, ECF pp. 3-150, *Riverwood* Appellate Record, ROA.14008-14208; and *Riverwood* Appellate Record, Norman Declaration, Doc. 72, Exh.. 101, ECF pp. 59-64, ROA.17362-17368, ¶¶ 10-14.

[9]*St. Charles Surgical Hosp. v. Louisiana Health Serv.*, 990 F.3d 447, 455 (5th Cir.2021)(emphasis added).

[10]*Id*. at 454.

[11]*Id.* at 455.

[12]990 F.3d 447, 454.

4

be "acting under" a federal officer for purposes of its avgas refining is not "acting under" for purposes of its crude oil production when its avgas refining is subject to federal controls and its crude production is not.  In *Riverwood,* the Fifth Circuit affirmed Judge Feldman's finding that the crude production activities of Defendants were regulated, but not controlled, by federal officers.  The Fifth Circuit arrived at the same conclusion in *Riverwood.* After *Riverwood,* the Fifth Circuit again affirmed in *Port of Corpus Christi Auth. of Nueces Cnty., Texas, v. Port of Corpus Christi, L.P.* that "acting consistently" with federal regulatory laws does not create a "special relationship" that satisfies the "acting under" prong.[13]

## III.  CRUDE OIL IS A COMMODITY, AND PRODUCING IT IS NOT A GOVERNMENT TASK

WWII triggered market demands for crude oil that were virtually unlimited, and the industry did not have to be pressured or controlled to meet those demands.[14]  Crude oil was bought and sold on the open market during WWII,[15] and no government controls of crude production methods were required to ensure that refineries had access to the crude oil they needed to comply with government

---

[13]22-40124, 2023 WL 116726, at *5 (5th Cir. Jan. 6, 2023)("Acting consistently with a federal permit that authorized and set conditions for making improvements to the berths for barges at a private oil terminal is not carrying out a federal officer's tasks or duties.").

[14]*See* Doc. 72, Exh 105, ECF pp. 180, *Riverwood* Appeal Record, ROA.16443, ¶ 61 ("No government agency had to compel [the oil industry] to do the job."); Doc. 72, Exh. 81, ECF p. 308, *Riverwood* Appeal Record, ROA.13967 ("production of oil in [Louisiana] reached an all time high"); Doc. 72, Exhibit 48, ECF p. 81, *Riverwood* Appeal Record, ROA.6869 (Ralph Davies: "The war caused a heavy drain on the oil fields of this country.").

[15]*See* the following documents in the *Riverwood* Appellate Record: Wimberley Declaration, Doc. 72, Exhibit 101, ECF pp. 16-19, ROA.17319-17322 (SOLA's Baton Rouge refinery purchased crude from 15 different producers during the 7 months examined.); Doc. 72, Exhibit 94, ECF pp. 26-27, ROA.16289-16310 (Pan American's Texas City refinery purchased crude oil from dozens of producers during WWII); Doc. 72, Exhibit 81, ECF pp. 250-51, ROA.13909-13910 ¶¶ 5(5) and 5(6) (PAW directed crude oil to refineries without regard to refiner/producer affiliation); Brigham Declaration, Doc. 72, Exhibit 94, ECF pp. 159, 185-189, ROA.16422; ROA.16448-16451 ¶¶ 8(E), 80-83 (integrated oil companies routinely bought and sold crude amongst themselves).

contracts. Defendants increased the supply of crude oil during WWII voluntarily.  Besides, crude oil

is a commodity. The production and sale of "off-the-shelf" commodities cannot support a finding

of federal officer jurisdiction.[16]

Under *Watson v. Philip Morris Companies, Inc.*, federal officer jurisdiction exists in a suit

against a private party only when the private party is performing the duties or tasks of a "federal

superior."[17]  Defendants cannot point to any evidence that the federal government ever drilled for

or produced oil and gas.[18]  Yet the crux of their argument is that they should be deemed to have

"acted under" simply because they helped the government fulfill basic government tasks by

producing an item it needed during wartime. The Fifth Circuit in *Glenn v. Tyson Foods, Inc.*

emphatically rejects any such argument:

> If anything, Tyson has a much harder case to make than Philip Morris did. At least
> the actions that Philip Morris took had previously been carried out by the
> government. Not so with Tyson. Packaging and processing poultry *has always been
> a private task—not a governmental one.*[19]

---

[16] During WWII crude oil was simply a commodity bought and sold on the open market. A "simple sale of commercial goods" to the government in and of itself does not support §1442 jurisdiction. *Cty. Bd. of Arlington Cty., Virginia v. Express Scripts Pharmacy, Inc.,* 996 F.3d 243, 255 (4th Cir. 2021) The "fact that the federal government purchases 'off-the-shelf' products from a manufacturer 'does not show that the federal government [has] supervised [the] manufacture of [such products] or directed [that they be] produce[d] in a particular manner, so as to come within the meaning of 'act[ed] under.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 2022 WL 1039685, at *28 (4th Cir. Apr. 7, 2022), quoting *Washington v. Monsanto*, 738 F. App'x 554, 555 (9th Cir. 2018); *see also, Smiley v. Honeywell*, 2015 WL 13285091, at *4 (N.D. Ga. Apr. 20, 2015)(no control of "ready-to-order, preexisting or off-the-shelf" product).

[17] 551 U.S. 142, 143; 127 S.Ct. 2301, 2302; 168 L.Ed.2d 42 (2007) ("Precedent and statutory purpose also make clear that the private person's "acting under" must involve an effort to assist, or to help carry out, the federal superior's duties or tasks.").

[18] Chevron conceded in *Mayor & City Council of Baltimore v. BP P.L.C.*, 2022 WL 1039685, at *34 (4th Cir. Apr. 7, 2022), that "the government relies upon private companies because it does not have its own oil and gas engineers or drilling equipment."

[19] *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 236 (5th Cir.2022)(emphasis added), writ denied February 21, 2023, Supreme Court Docket No. 22-455.

Likewise, not so with Defendants. Crude production has "always been a private task— not a governmental one."[20]  The government purchased refined products made from crude during WWII, not the crude itself.  Defendants actually have an even harder case to make than Tyson.  The duty or task of producing crude has never been the duty or task of a "federal superior."

## IV.    POST-PRODUCTION ALLOCATION AND TRANSPORTATION OF CRUDE

Defendants' own evidence shows that regardless of the ownership or corporate affiliation of any refinery, the PAW programmed the distribution and transportation of crude oil to refiners ***only after*** the crude was produced in the field.  Defense expert Gravel stated in his declarations in *Riverwood* that the "PAW's crude oil assignments [to refineries] took into consideration a range of factors, including efficiency of transport of both crude and refined products, capacity of the refinery to handle the volume of crude, and the types of war products that could be made from select crude."[21] Noticeably absent from this listing of factors is the crude oil producer's conduct in producing crude oil, or its relationship or affiliation, if any, with the refiner.  While the government may have "programmed" the distribution and transportation of crude after it was produced in the field, such programming had nothing to do with how the crude was produced before it was available for transport, and had nothing to do with the corporate identity of the owner of the particular refinery.[22] "Under this system, after crude was produced at a well it was allocated to refineries not on the basis of which company owned the crude, but 'providing the minimum quantities necessary to assure

---

[20]*See* footnote 18, *supra.*

[21]Doc. 72, Exhibit 81, ECF pp. 289-92*, Riverwood* Appellate Record, ROA.13948, ¶ 68.

[22]*See* attached Brigham Declaration, Exhibit 1, ¶¶ 8-13.

maximum output of war products.'"[23] As shown previously, the Gravel Declaration submitted by the defendants in *Riverwood* shows that Humble Oil produced crude oil in the Potash Field in Plaquemines Parish, which was the subject of *Riverwood*, but none of that Potash crude was refined by any refinery owned by Humble.[24] The oil industry is divided into three sectors, namely Production, Transportation, and Refining. This case targets only crude production, not transportation or refining, and any government involvement in transportation or refining is irrelevant to crude production.

A person who "acts under" a federal officer does not "act under" that officer for everything that he does. The charged conduct as set forth in the complaint must be directed by a federal officer to satisfy the "acting under" prong. The Plaintiff's petition says nothing about refining. The interpretation of § 1442 urged by Defendants would treat the crude production activities of producer-only companies differently than the crude production activities of producer-refining companies simply based on the entirely coincidental fact that the producer-refining companies happen to have a refining division that refined some amount (no matter how small) of their own crude. The coincidental occurrence of refining and crude production within the same corporate entity bears no relevance to the issue of whether the government directed and controlled crude exploration and production activities. Thus, the pertinent jurisdictional facts of this case are no different from the jurisdictional facts of any other case in this district where no defendant refined crude that it produced.

---

[23]*See* attached Brigham Declaration, Exhibit 1, ¶¶ 8-13 (specifically quoting ¶ 12).

[24]Doc. 72, Exh. 81, ECF pp. 289-92, *Riverwood* Appellate Record, ROA.13948-50.

In sum, Defendants' argument that cases involving defendants who refined crude that they produced are distinguishable from *Riverwood* cannot be squared with the Fifth Circuit's opinions in *St. Charles II* and *Riverwood.* There is no good reason to distinguish this case from the other cases pending in this district wherein no defendant refined crude that it produced, or no defendant conducted any refinery operations at all.

In *Riverwood*, the Fifth Circuit held that the "Producers [*i.e.*, Defendants] are not entitled to removal under § 1442 because (1) there is insufficient 'evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement' indicating that the oil companies acted under a federal officer's or agency's directions; and (2) we find Producers' alternative theories on this issue unpersuasive."[25]  The *Riverwood* Defendants argued that they had a "special relationship" with the government that supported a finding of federal officer jurisdiction. The Fifth Circuit found that no such relationship existed. The "special relationship" alleged in this case is based on the same flimsy evidence of alleged regulation-based federal controls that the Fifth Circuit found to be insufficient in *Riverwood.*

## V.    THE JURISDICTIONAL REQUIREMENT OF A COLORABLE FEDERAL DEFENSE

The essence of Defendants' new refinery based argument for federal officer jurisdiction is that a defendant that refines its own crude under a government refinery contract does not have to "act under" federal officers to establish §1442 jurisdiction in a civil action based on its own crude production activities. This jurisdictional theory is contrary to the statutory text and *Latiolais.*

---

[25]*Plaquemines Par. v. Chevron USA, Inc.*, 22-30055, 2022 WL 9914869, at *2 (5th Cir. Oct. 17, 2022).

9

Federal officer jurisdiction "must be predicated on the allegation of a colorable defense."[26] "[T]he statute's requirement that a removing party assert a colorable federal defense remains a constitutional, viable, and significant limitation on removability,"[27] and is "the very source of the court's constitutional jurisdiction over the claim."[28] The "colorable federal defense" requirement is derived from the "act under color of such office" language in §1442.[29]

When a removing party is not itself a federal officer, § 1442 requires proof of an act under federal direction **and** a federal defense.[30] "The purpose of [§ 1442] is to provide a federal forum in cases *where a defendant is entitled to raise a defense arising out of their official duties*."[31] Since the Fifth Circuit in *Riverwood* held in essence that the duties of crude producers *were not official duties* (*i.e.*, not the "task of a federal officer"), no colorable federal defense that would support §1442 jurisdiction could possibly arise out of these duties because the very purpose of §1442 is to provide a federal forum to defendants who are "entitled to raise a defense *arising out of their official*

---

[26]*Mesa v. California*, 489 U.S. 121, 129 (1989).

[27]*Latiolais,* 951 F.3d 286, 296 (5th Cir. 2020), citing *Mesa*, 489 U.S. at 136–37.

[28]*Williams v. Todd Shipyards Corp*., 154 F.3d 416 (5th Cir.1998), quoting *Mesa, supra*, at 136.

[29]*Mesa*, 489 U.S. 121, 135 ("[W]e concluded that 'in the performance of his duties' meant no more than 'under color of office,' and *that Congress meant by both expressions to preserve the pre-existing requirement of a federal defense for removal*.")(emphasis added); *Willingham v. Morgan,* 395 U.S. 402, 406–07 (1969)(same); *Jax Leasing v. Xiulu Ruan*, 359 F. Supp.3d 1129, 1136 ("requirement of a colorable federal defense flows from the 'act under color of such office' language").

[30]*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir.2020).

[31]*Jackson v. Avondale Indus. Inc.,* 469 F.Supp.3d 689, 701 (E.D. La.2020)(emphasis added). *Arizona v. Manypenny*, 101 S.Ct. 1657, 1664 (1981) ("Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a *federal official is entitled to raise a* **defense** *arising out of his official duties*.")(emphasis added).

*duties*."[32] Here, Defendants' "acts" in producing crude are not "act[s] under color of [federal] office."

A crude producer who ***has not*** "acted under" a federal officer in producing crude cannot remove a civil action based on his E & P activities by asserting a colorable federal defense arising from his official duties as a refiner. Yet, this is the upshot of Defendants' argument. Nothing in § 1442 authorizes an E & P division of a corporate defendant that *has not* "acted under" a federal officer to co-opt willy-nilly the colorable federal defenses of a separate refinery division of the same corporate defendant that *has* "acted under" a federal officer.

*St. Charles II* held that a defendant "acting under" a federal officer does not necessarily "act under" that officer for "all purposes"[33] Under Defendants' far-fetched jurisdictional theory, a defendant subject to *any* federal direction, however limited, "acts under" federal officers for everything he does.

## VI.   CONCLUSION

The arguments of Plaintiff and Intervenors in *Riverwood* are incorporated herein by reference. Their Joint Original Brief filed in the Fifth Circuit is attached hereto as Exhibit 2.

The Fifth Circuit in *Riverwood,* citing *Latiolais*,[34] held that Defendants had the burden of proving, *inter alia*, that they "acted pursuant to a federal officer's [or agency's] directions."[35] Finding no "federal direction" of crude production in the record, the Court held that Defendants failed to carry their burden. Now Defendants claim that their refinery contracts supply the necessary federal

---

[32]*Jackson v. Avondale Indus. Inc., supra*, citing *Arizona v. Manypenny*, *supra.*(emphasis added).

[33]*St. Charles Surgical Hosp. v. Louisiana Health Serv.*, 990 F.3d 447, 455 (5th Cir.2021).

[34]*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir.2020).

[35]*Plaquemines Par. v. Chevron USA, Inc.,* 22-30055, 2022 WL 9914869, at *2.

directions missing in *Riverwood*. But federal directions of crude production are nowhere to be found in the refinery contracts, or anywhere else. Simply put, §1442 jurisdiction requires "an act pursuant to a federal officer's directions"[36] ("an act under color of such office"[37]), but Defendants cannot prove the existence of such an act because there are no proven federal directions *of crude production* in this case in the first place.

In opposing a previous motion to re-open in *Plaquemines v. Palm Energy Offshore*, Chevron argued that "the **bottom line is that the Fifth Circuit's decision in the Riverwood appeal will provide the controlling legal framework** for this Court to apply in analyzing Plaintiffs' contentions in their expert report and petition, and Defendants' arguments that those contentions give rise to federal officer jurisdiction."[38] Similar statements were made by defendants opposing motions to re-open in other Eastern District cases.[39] Now that their arguments in *Riverwood* have been rejected by the Fifth Circuit, Defendants want to move their "bottom line," throw *Riverwood* in the trash, and start the removal game all over again. Five years of baseless removal arguments are enough.

---

[36]Quoting *Latiolais, supra.*

[37]Quoting § 1442.

[38]*The Parish of Plaquemines v. Palm Energy Offshore, L.L.C.*, Civil Action No. 2:18-cv-5259, Doc. 45, ECF page 5(emphasis added); and *see also* Doc. 51, ECF p. 3; and also Doc. 61, ECF pgs. 8-9.

[39]*See St. Bernard et al v. Atlantic Richfield, et al*, 18-cv-5222, Doc. 75, ECF p. 9; *Plaquemines et al v. Caskids, et al*, 18-cv-5262, Doc. 38, ECF pp. 8-9; *Plaquemines et al v. LLOG, et al*, 18-cv-5265, Doc. 48, ECF pp. 8-9; *Plaquemines et al v. Goodrich Petroleum, et al*, 18-cv-5238, Doc. 54, pp. 8-9.

*By Attorneys for Plaintiff, the Parish of Jefferson
and State of Louisiana, ex rel. Parish of Jefferson:*

Donald T. Carmouche (2226)
Victor L. Marcello (9252)
John H. Carmouche (22294)
William R. Coenen, III (27410)
Brian T. Carmouche (30430)
Todd J. Wimberley (34862)
Ross J. Donnes (33098)
D. Adele Owen (21001)
Leah C. Poole (35092)
Christopher D. Martin (30613)
Michael L. Heaton (38773)
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 400-9991
Fax: (225) 448-2568

Philip F. Cossich, Jr. (1788)
Darren Sumich (23321)
David A. Parsiola (21005)
Brandon J. Taylor (27662)
COSSICH, SUMICH, PARSIOLA & TAYLOR, L.L.C.
8397 Highway 23, Suite 100
Belle Chasse, LA 70037-2648
Telephone: (504) 394-9000
Fax: (504) 394-9110

Bruce D. Burglass, Jr. (1411)
Andre' C. Gaudin (20191)
Scott O. Gaspard (23747)
BURGLASS & TANKERSLEY, LLC
5213 Airline Drive
Metairie, LA 70001-5602
Telephone: (504) 836-0407; Fax: (504) 287-0447

By: */s/Victor L. Marcello (9252)*

*By Attorneys for Intervenor-Plaintiff, the State of Louisiana, through the Department of Natural Resources, Office of Coastal Management and its Secretary, Thomas F. Harris:*

J. Blake Canfield (30426)
Executive Counsel
Donald W. Price (19452)
Special Counsel
DEPARTMENT OF NATURAL RESOURCES
Post Office Box 94396
Baton Rouge, LA 70804

By:  /s/ Donald W. Price (19452)

*By Attorney for Intervenor-Plaintiff, the State of Louisiana, ex rel. Jeff Landry, Attorney General:*

Ryan M. Seidemann, (28991)
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
1185 North 3rd Street
Baton Rouge, LA 70802
Telephone: (225) 326-6085
Fax: (225) 326-6099

By:  /s/ Ryan M. Seidemann (22294)

14